NUMBER 13-09-280-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      
 
MIGUEL BALDERAS,                                       Appellant,

v.
 
THE STATE OF TEXAS,                                                     Appellee.
                                                                                                                      

On appeal from the 404th District Court 
of Cameron County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Vela

          A jury found appellant, Miguel Balderas, guilty of the murder of Enrique Velez. See
Tex. Penal Code Ann. § 19.02(b)(1), (2) (Vernon 2003). The trial court assessed
punishment at fifty years’ imprisonment. Appellant raises eight issues for our
consideration. We affirm. 
I. Factual Background
          About 7:20 a.m. on April 20, 2003, Brownsville police received a call regarding a
“subject down” on Midway Drive. When Officer Gilbert Gonzalez arrived at the scene, he
saw Enrique Velez, laying face down on the side of the street. Velez had head trauma



and no pulse. When Officer Jesus Vallejo arrived, he saw that Velez was not wearing any
jewelry or rings. A witness, Maria Lucio, who lived on Midway Drive, recalled seeing a gray
van with a yellow stripe leaving the scene prior to the time the police found Velez’s body.
          The investigation into the events surrounding Velez’s murder revealed that in the
late evening of April 19, 2003, Roberto Rivera saw Velez and appellant at a pool hall in
Brownsville. The following morning, between 12:30 and 1:00, two other witnesses saw
appellant and Velez at the same pool hall. Velez, who was wearing “bulky jewelry,” left the
pool hall with appellant in a van between 1:45 a.m. and 2:00 a.m. Between 3:00 and 3:20
that morning, Rivera stopped at Velez’s house to visit him. Rivera saw a “greyish van”
parked there. He testified that appellant was at Velez’s home, talking on the phone.
          About 4:30 that morning, Velez was outside his house, and a grayish van with a
yellow stripe was parked there. By 5:00 that morning, the van was gone.
          Juan Sosa testified that between 7:00 and 7:30 that morning, he was at home when
appellant came to his house and told him that “he had had some kind of an argument with
somebody . . . but that it didn’t amount to much. . . .” Arturo Marroquin testified that in the
afternoon of April 20, 2003, appellant sold him a ring. Afterwards, appellant offered to sell
him some gold-colored chains. Marroquin did not buy the chains, and appellant told him
that he had a van and asked Marroquin if he was interested in exchanging it for
Marroquin’s pickup. Marroquin refused the offer. Later, Marroquin gave the ring that he
bought from appellant to Officer Vallejo. Velez’s daughter identified the ring that Marroquin
bought from appellant as Velez’s ring. She testified that her father would never have sold
the ring or given it away. 
          At 1:18 a.m. on April 21, 2003, Brownsville police received a call about a burning
van at Fourth and East Jefferson. When Officer Billy Killibrew arrived at the scene, he saw
a van engulfed in flames. Officer Vallejo testified that the van was registered to a Margarita
Vasquez Soto, who is appellant’s cousin. Officer Manuel Lucio searched the van and
recovered a yellow shirt and a striped shirt from inside the van. 
          Ben Nunez, a certified fire-and-arson investigator, examined the burned van and
testified that in his opinion the fire was intentionally started and that gasoline was used as
an accelerant. He testified that people can receive injuries when starting fires with gasoline
because of its explosive nature.
          Sergio Leal testified that on April 19, 2003, he was in Brownsville at his brother’s
mechanic’s shop when appellant arrived, driving a van that was pulling a trailer. His
brother let appellant leave the trailer at the shop. Sergio testified that the van’s color was
“kind of grayish, bluish. . . .” About two weeks later, appellant returned to the shop, driving
a car that he used to pick up the trailer. When the prosecutor asked Sergio, “And did you-all discuss where he [appellant] had been or why he hadn’t picked up his trailer already?”,
he said that appellant “claimed that he had gotten, . . . in a disagreement with somebody”
and “that somebody tried to burn him. . . .” Sergio saw “some burns” on one of appellant’s
arms.
 
          Crystal Anderson, a forensic scientist, found an apparent blood stain on each of the
two shirts recovered from the burned van. She performed two DNA tests on each stain
and testified that the first DNA test on each stain showed that “Enrique Velez cannot be
excluded as a contributor” to the DNA found in each stain. Her second DNA test showed
that the DNA profiles obtained from each stain are “consistent with the DNA profile of the
victim.“ She further testified the DNA profile obtained from a second stain on the yellow
shirt “is consistent with the DNA profile of the victim. The victim cannot be excluded as a
contributor of the stain. . . .”
          The defense did not call any witnesses to testify at the guilt-innocence phase.
II. Discussion
A. Charge Error
          We address issue two first wherein appellant argues the trial court erred by failing
to instruct the jury on the issue of “extraneous offense.” During the charge conference,
defense counsel requested this instruction,


 which the trial court denied.
          We analyze charge error according to the two-step test announced in Almanza v.
State, 686 S.W.2d 157, 171-74 (Tex. Crim. App. 1985) (op. on reh’g). First, we determine
whether error exists in the charge. Next, if error exists, we determine whether appellant
was harmed sufficiently to require reversal. Id.
          Even if we assume the trial court erred by failing to instruct the jury, appellant does
not address the question of whether the alleged error in failing to include such instruction
was harmful. Texas Rule of Appellate Procedure 38.1(i) provides that “[t]he brief must
contain a clear and concise argument for the contentions made, with appropriate citations
to authorities and to the record.” Tex. R. App. P. 38.1(i). Accordingly, appellant has
inadequately briefed this issue by failing to present argument and authorities as required
by rule 38.1(i). See Cardenas v. State, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000)
(stating that appellant who did not address the question of whether the alleged error by the
trial court in failing to include a jury instruction regarding the voluntariness of his statement
to police was harmless constituted inadequate briefing under rule 38.1(i) and waived the
issue for appellate review); see also Ladd v. State, 3 S.W.3d 547, 575 (Tex. Crim. App.
1999) (holding that requiring capital appellants to abide by the briefing rules does not
offend due process). Issue two is overruled.
B. Motion To Suppress
          In issue three, appellant argues the trial court erred by failing to suppress the
evidence seized pursuant to a warrantless search of the burned van.
1. Suppression Hearing
          Appellant filed a motion to suppress the evidence seized from the burned van as the
product of an unlawful, warrantless search. At the pretrial suppression hearing, the
defense called two witnesses, Officer Vallejo and Investigator Nunez. 
          Officer Vallejo testified that at 4:30 a.m. on April 20, 2003, two witnesses “placed
the victim [Enrique Velez] . . . with the subject in a van.” Officer Vallejo stated that about
4:45 that morning, Velez’s uncle saw a gray van at Velez’s house and that “a male” was
“out there with the van[.]” Velez’s “compadre” described the van as gray with a blue stripe. 
At 6:45 that morning, a citizen called the police regarding the discovery of Velez’s body on
Midway Drive. Maria Lucio told police she saw a gray van with a yellow stripe, speeding
away from where the body was found. At 2:30 a.m. on April 21, 2003, Brownsville police
received a call about a burning van parked on a street. The van was registered to
appellant’s cousin, Margarita Vasquez Soto, who sold it to appellant in early April 2003. 
Officer Vallejo stated that police could not locate appellant, and appellant did not contact
the police “and assert that this was his van.” When defense counsel asked Officer Vallejo,
“To your knowledge, did anybody see anybody . . . start the van on fire?,” he said, “No . .
. but the Defendant, as per various witnesses, sustained burns.” Officer Vallejo testified
that Detective Manuel Lucio conducted a warrantless search of the van on May 19, 2003.
          Investigator Nunez testified that he investigated the cause and origin of the fire to
the van while it was parked in a salvage yard. Without a warrant, he searched the van’s
interior and recovered “a baseball bat and several shirts that appeared to have what
appeared to be blood on them.” Investigator Nunez also took some carpeting and padding
from the van as well as some samples from behind the van’s driver’s seat. He submitted
these items to the arson investigation lab in Austin. Investigator Nunez saw “three
significant depressions” on the particle board towards the rear of the van’s cargo area. He
said this “appeared to be based on pour patterns, as if somebody had taken a flammable
liquid and doused this area.” He stated that the “lab results did pick up traces of gasoline
inside the samples that I submitted. . . .” Investigator Nunez concluded that the “fire was
of an incendiary nature” and that “it was intentionally set [on] fire.” He stated that he was
the only person who searched the van’s interior for evidence.
          After hearing closing arguments, the trial judge denied the motion to suppress and
stated in her findings of fact and conclusions of law


 that her denial of the motion was
based on the “crime scene” exception to the warrant requirement. 
2. Standard of Review
          In St. George v. State, the court of criminal appeals stated:
Whether a specific search or seizure was reasonable is a mixed
question of law and fact and is conducted de novo. We review a trial court’s
ruling on a motion to suppress evidence under a bifurcated standard of
review. We do not engage in our own factual review; rather, the trial judge
is the sole trier of fact and judge of credibility of the witnesses and the weight
to be given to their testimony. Trial courts are given almost complete
deference in determining historical facts. We review the record to determine
whether the trial court’s ruling is supported by the record and correct under
some theory of law applicable to the case.

237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citations omitted).
          We are obligated to uphold the trial court’s ruling on appellant’s motion to suppress
if the record supported the ruling and was correct under any theory of law applicable to the
case. Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). “That rule holds
true even if the trial court gave the wrong reason for its ruling.” Id. Our task is to determine
whether the trial court could have reasonably denied appellant’s motion to suppress, given
the evidence and given the applicable law. See id.
3. Applicable Law & Analysis
          “[T]he State’s intrusion into a particular area, whether in an automobile or
elsewhere, cannot result in a Fourth Amendment violation unless the area is one in which
there is a constitutionally protected reasonable expectation of privacy.” New York v. Class,
475 U.S. 106, 112 (1986) (internal quotation marks omitted). Thus, a defendant seeking
to suppress evidence obtained in violation of the Fourth Amendment must first show that
he personally had a reasonable expectation of privacy that the government invaded. Kothe
v. State, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). When an accused voluntarily
abandons property, he lacks standing to contest the reasonableness of the search of the
abandoned property. McDuff v. State, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997). Only
after an accused has established his standing to complain may a court consider whether
he has suffered a substantive Fourth Amendment violation. Kothe, 152 S.W.3d at 59. An
appellate court may raise the standing issue on its own,


 and we review the legal issue of
standing de novo. Id. at 59-60.
          In McDuff, the court of criminal appeals explained:
Abandonment of property occurs if the defendant intended to abandon
the property and his decision to abandon it was not due to police misconduct. 
When police take possession of property abandoned independent of police
misconduct there is no seizure under the Fourth Amendment. This Court
has spoken approvingly of language in U.S. v. Colbert, 474 F.2d 174 (5th Cir.
1973) (en banc), which discussed how abandonment is primarily a question
of intent to be inferred from words spoken, acts done, and other objective
facts and relevant circumstances, with the issue not being in the strict
property-right sense, but rather whether the accused had voluntarily
discarded, left behind, or otherwise relinquished his interest in the property
so that he could no longer retain a reasonable expectation of privacy with
regard to it at the time of the search.
McDuff, 939 S.W.2d at 616 (internal citations omitted).
          In this case, the evidence showed that at 2:30 a.m. on April 21, 2003, appellant’s
van was found on fire and parked on a street. Officer Vallejo testified that the van was not
searched until May 19, 2003. The police could not locate appellant, and he never
contacted the police about his van. No keys were found in the van, and the evidence does
not show that anyone including appellant reported the van as being stolen. Furthermore,
less than twenty-four hours before police found appellant’s burning van, a van was seen
speeding away from the area where Velez’s body was found. Even though the police did
not know who set appellant’s van on fire, Officer Vallejo testified that appellant “as per
various witnesses, sustained burns.” Accordingly, there is sufficient evidence of
abandonment, i.e., that appellant intended to abandon his van and his decision to abandon
it was not due to police misconduct. Therefore, appellant does not have standing to
challenge the search because he did not retain a reasonable expectation of privacy with
regard to the van at the time of the search. See id. We hold that the trial court did not err
by denying appellant’s motion to suppress. Issue three is overruled.
C. Admission Of Photographs
          In issue four, appellant argues the trial court erred in admitting, over timely
objection, photographs of the interior and exterior of his burned van. Specifically, he
argues that the trial court should have excluded the photos under Texas Rule of Evidence
403.
          Rule 403 allows the trial court to exclude evidence if the probative value of the
evidence “is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.” Tex. R. Evid. 403. A proper rule 403 analysis
“includes, but is not limited to, the following factors: (1) the probative value of the
evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the
time needed to develop the evidence; (4) the proponent’s need for the evidence.” Erazo
v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). In the context of the admission of
photographs into evidence, we also consider factors including “the number of photographs,
the size, whether they are in color or are black and white, whether they are gruesome,
whether any bodies are clothed or naked, and whether the body had been altered by
autopsy.” Id. We review the trial court’s decision to admit or exclude photographs under
an abuse-of-discretion standard. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1991).
          The State introduced fifty-two, four-inch by six-inch color photos, showing various
aspects of the van’s interior and exterior as well as some of the carpeting and other
material removed from the van. The photos are not gruesome and do not impress the jury
in some irrational, yet indelible, way. The time needed to introduce the photos and have
the witnesses (Officer Killibrew and Investigator Nunez) explain them was short in
comparison to the time the State spent in developing the remainder of the evidence. The
State’s need for the photos is significant because they showed the jury the extent of the
fire damage and this helped Investigator Nunez to support his conclusion that the fire was
intentionally set. Thus, the probative value of the photos is not “substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.” See
Tex. R. Evid. 403. We hold that the trial court did not abuse its discretion by admitting the
photographs into evidence. Issue four is overruled. 
D. Use Of The Van As Part Of The Crime Scene

          In issue five, appellant argues “[t]he trial court erred in allowing the State to present
evidence of Appellant’s use of the van as a scene of the murder.” Appellant’s argument
contains no citations to the record or reference to any specific evidence found in the
record. An “[a]ppellant must direct the court to the specific portion of the record supporting
the alleged error.” Jensen v. State, 66 S.W.3d 528, 545 (Tex. App.–Houston [14th Dist.]
2002, pet. ref’d). Because appellant’s argument on this issue contains no citations to the
record and no citation to authorities, he has waived appellate review of his complaint. See
Tex. R. App. P. 38.1(i); see also Cardenas, 30 S.W.3d at 393 (holding that appellant who
inadequately briefed points by neglecting to provide argument and authorities as required
by rule 38.1(i) waives the complaint on appeal). Issue five is overruled.
E. Admission Of Evidence In Violation Of The Right To Cross-Examine Witnesses

          In issue six, appellant argues the trial court erred in allowing evidence to be offered
from a witness in violation of his right of cross-examination. Appellant’s argument contains
no citations to authorities and no citations to the record or reference to any specific
instance where the trial court denied him the right to cross-examine any witness. Failure
to adequately brief an issue, either by failing to specifically argue and analyze one’s
position or provide authorities and record citations, waives any error on appeal. See
Hankins v. State, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004); see also Cardenas, 30
S.W.3d at 393. Issue six is overruled.
F. Closing Argument
          In issue seven, appellant argues the State’s closing argument violated his right to
a fair trial. During the guilt-innocence phase, the State made the following remarks during
its closing argument


 to the jury: 
You heard people discussing [appellant’s] burns. I don’t know if they were
third degree, if they were somewhat minor, but there were burns. There
were burns. I can’t tell you where he [appellant] was for three-and-a-half
years, okay. People heal in three-and-a-half years.
 
. . . . 
 
You can put him [appellant] with the jewelry. He takes it, and he goes. 
Where does he go? He’s looking for help from family.

          Appellant argues that the italicized remarks show that the State was (1) making
reference to evidence outside the record and (2) commenting on his failure to testify or
offer evidence. The approved general areas of argument are summation of the evidence,
reasonable deduction from the evidence, answer to opposing counsel’s argument, and
plea for law enforcement. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). 
Neither the trial judge nor the prosecution may comment on the defendant's failure to
testify, and any comment thereon violates the Fifth Amendment privilege against self-incrimination.


 Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (citing Griffin
v. California, 380 U.S. 609, 614 (1965)), see Tex. Code Crim. Proc. Ann. art. 38.08. To
violate the right against self-incrimination, the offending language must be viewed from the
jury's standpoint and the implication that the comment referred to the defendant's failure
to testify must be clear. Cruz, 225 S.W.3d at 548. It is not sufficient that the language
might be construed as either an implied or indirect allusion. Id. The test is whether the
language used was manifestly intended or was of such a character that the jury would
necessarily and naturally take it as a comment on the accused's failure to testify. Id. “In
applying this standard, the context in which the comment was made must be analyzed to
determine whether the language used was of such character.” Id. (citing Bustamante v.
State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001)).
          In this case, defense counsel did not object to the complained-of remarks. To
preserve error on appeal for improper jury argument, the defendant must object to the
comment and pursue the objection until the trial court rules adversely. Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Because no objections were lodged against
the complained-of remarks, any error is not preserved for appellate review. See id. 
Nevertheless, viewing the complained-of remarks from the jury's standpoint, we do not
believe the language used was manifestly intended or was of such a character that the jury
would necessarily and naturally take it as a comment on appellant’s failure to testify or offer
evidence. Issue seven is overruled.
G. Motion for New Trial
          In issue eight, appellant contends the trial court erred by denying his motion for new
trial because the trial court failed to properly instruct the jury on the issue of extraneous
offenses. Defense counsel filed a motion for new trial, alleging that the trial court, “over
the request[


] of defense counsel, [failed] to instruct the jury that they were not to consider
the burning of the . . . [van] unless they believed beyond a reasonable doubt that
[appellant] committed said offense.” Following a hearing,


 the trial court overruled the
motion for new trial.
          We review the trial court’s denial of a motion for new trial under an abuse-of-discretion standard. Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We
do not substitute our judgment for that of the trial court; rather, we decide whether its
decision was arbitrary or unreasonable. Id. We must view the evidence in the light most
favorable to the trial court’s ruling and presume that all reasonable factual findings that
could have been made against the losing party were made against that party. Id. Thus,
a trial court abuses its discretion in denying a motion for new trial only when no reasonable
view of the record could support the trial court’s ruling. Id.
 
          The State argues that the burning of the van constituted “same transaction
contextual evidence,” and therefore, no instruction was necessary. “Same-transaction
contextual evidence results when an extraneous matter is so intertwined with the State’s
proof of the charged crime that avoiding reference to it would make the State’s case
incomplete or difficult to understand.” Prible v. State, 175 S.W.3d 724, 732 (Tex. Crim.
App. 2005). A trial court may admit “extraneous-offense evidence . . . as same-transaction
contextual evidence, where several crimes are intermixed, or blended with one another,
or connected so that they form an indivisible criminal transaction.” Id. at 731-32 (internal
quotation marks omitted). “Such extraneous offenses are admissible to show the context
in which the criminal act occurred.” Wesbrook, 29 S.W.3d at 115. “This evidence is
considered ‘res gestae,’ under the reasoning that events do not occur in a vacuum, and
the jury has a right to hear what occurred immediately prior to and subsequent to the
commission of that act so that it may realistically evaluate the evidence.” Id. “When this
evidence of extraneous offenses is used to prove a main fact in the case, an instruction
limiting the jury’s consideration of this evidence is generally not required.” Id. 
          Here, the evidence showed that shortly before Velez’s body was found, he and
appellant were seen leaving the pool hall together in a van. Another witness saw a gray
van, speeding away from the location where Velez’s body was found. Early the next
morning, appellant’s van was found on fire, and two shirts recovered from the van
contained DNA consistent with Velez’s DNA. Investigator Nunez testified that the fire to
the van was started by gasoline and that people can receive injuries when starting fires
with gasoline. Sergio Leal testified that the evening before Velez’s murder, appellant was
driving a van and that two weeks later, appellant was driving a car and that he saw “some
burns” on one of appellant’s arms. This evidence supports a finding by the trial court that
appellant set fire to his van in an attempt to destroy evidence linking him to Velez’s murder. 
The extraneous matter of the van being set on fire is so intertwined with the State’s proof
of the charged offense that avoiding reference to it would make the State’s case
incomplete or difficult to understand. Id. at 732. Therefore, the extraneous offense of the
burning of the van is admissible as same transaction contextual evidence. Accordingly,
we hold that the trial court did not abuse its discretion by denying appellant’s motion for
new trial. Issue eight is overruled.
H. Ineffective Assistance Of Counsel

          In issue one, appellant argues he received ineffective assistance of counsel.
1. Standard Of Review
          Strickland v. Washington defines the components required to show ineffective
assistance of counsel. 466 U.S. 668, 687 (1984). The two required components are a
performance component and a prejudice component. Id. First, the defendant must show
that counsel’s performance was deficient, which requires a showing that counsel made
errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth
Amendment. Perez v. State, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy
this prong of the analysis, the defendant “must show that counsel’s representation fell
below an objective standard of reasonableness” based upon “prevailing professional
norms.” Strickland, 466 U.S. at 688. For this performance inquiry, we consider all the
circumstances with “a strong presumption that counsel’s conduct [fell] within the wide
range of reasonable professional assistance.” Id. at 688-89.
          Second, the defendant must show that counsel’s deficient performance prejudiced
the defense. Perez, 310 S.W.3d at 893. This requires the defendant to show that
counsel’s errors “were so serious as to deprive the defendant of a fair trial, a trial whose
result is reliable.” Id. (citing Strickland, 466 U.S. at 687). To satisfy this element, the
“‘defendant must show that there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different.’” Id. (quoting
Strickland, 466 U.S. at 694). The defendant has the burden of proving ineffectiveness by
a preponderance of the evidence. Id. (citing Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005)).
2. Analysis
          First, appellant states that trial counsel was ineffective because he “fail[ed] to
adequately protect Appellant’s rights by insisting on discovery requests.” However,
appellant does not state what discovery requests trial counsel failed to insist upon. 
Furthermore, even assuming trial counsel was deficient for failing to insist upon discovery
requests, appellant has not shown “‘that there is a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been different.’” 
Perez, 310 S.W.3d at 893 (quoting Strickland, 466 U.S. at 694).
          Second, appellant argues trial counsel was ineffective because “he fail[ed] to object
to the introduction of evidence in violation of Appellant’s Fourth Amendment rights.” See
U.S. Const. amend. IV. Appellant complains that counsel did not properly object to State’s
exhibits 1, 2, 3A, 3B, and 12-49, which are photos of the burned van. However, even if we
assume that trial counsel did not properly object to these exhibits, appellant has failed to
show that “‘there is a reasonable probability that, but for counsel’s unprofessional errors,
the result of the proceeding would have been different.’” Perez, 310 S.W.3d at 893
(quoting Strickland, 466 U.S. at 694).
          Third, appellant complains trial counsel was ineffective because he “fail[ed] to object
to hearsay testimonial statements by the pathologist.” However, because appellant’s
argument contains no citations to the record, he has waived appellate review of his
complaint. See Tex. R. App. P. 38.1(i); Jensen, 66 S.W.3d at 543.
          Fourth, appellant complains trial counsel was ineffective because he “open[ed] the
door to the admission of similar extraneous offense and other ‘bad acts’ evidence during
the guilt/innocence phase thereby destroying the credibility of Appellant and prejudicing his
defense[.]” Appellant has failed to direct our attention to any location in the record where
trial counsel allegedly opened the door to any extraneous offenses or bad acts. Because
appellant’s argument regarding this complaint contains no citations to the record, he has
waived appellate review of his complaint. See Tex. R. App. P. 38.1(i); Jensen, 66 S.W.3d
at 543.
          Lastly, appellant argues trial counsel was ineffective because he “fail[ed] to object
to hearsay improper statements.” Because appellant’s argument regarding this complaint
contains no citations to the record where counsel allegedly failed to object to hearsay, he
has waived appellate review of this complaint. See Tex. R. App. P. 38.1(i); Jensen, 66
S.W.3d at 543. Issue one is overruled.
III. Conclusion
          We affirm the trial court’s judgment. 
          
 
                                                                           ROSE VELA 
                                                                           Justice


Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the 
9th day of December, 2010.